# SALES REPRESENTATIVE AGREEMENT

AGREEMENT, Made this 28th day of MAY _____ by and between Log Cabin Homes LTD., a Delaware Corporation with its principal place of business in Rocky Mount, North Carolina (herein "COMPANY"), and WALTER ALAN OCRFMEISTER (herein "SALES REPRESENTATIVE").

## WITNESETH

WHEREAS, COMPANY is engaged in the business of manufacturing and distribution of materials and pieces designed for the use in the construction of log, post and beam and conventional frame buildings; and

WHEREAS, COMPANY desires to engage SALES REPRESENTATIVE to effect sales of COMPANY'S products,

In consideration of the mutual promises hereinafter set forth, the parties agree as follows:

1. PURPOSE - COMPANY engages SALES REPRESENTATIVE to sell the products manufactured and distributed by it in accordance with the terms and conditions of this agreement.

2. DUTIES - SALES REPRESENTATIVE hereby agrees to sell the products manufactured and distributed by the COMPANY, and will devote such time and efforts in the sales of such products as may be required, as scheduled by management. COMPANY agrees to furnish SALES REPRESENTATIVE, upon request, pricing, delivery and technical information covering the COMPANY'S products as they may be related to the sales efforts of SALES REPRESENTATIVE. COMPANY will quote SALES REPRESENTATIVE its most competitive gross price for any inquiry. SALES REPRESENTATIVE shall be authorized to apply such discounts, as may from time to time may be offered by COMPANY, to arrive at an effective net retail price.

3. SALES LEADS - COMPANY agrees to supply SALES REPRESENTATIVE with names and addresses of those individuals or groups of individuals requesting information on COMPANY'S products in accordance with the following procedures:

    a. At the outset of this agreement, COMPANY will provide SALES REPRESENTATIVE with a supply of company sales leads.

    b. SALES REPRESENTATIVE agrees to contact and qualify each sales lead and return them to the COMPANY qualified as to a pre-agreed category.

    c. Provided that SALES REPRESENTATIVE complies and continues in compliance, with paragraph 3.b. hereinabove, SALES REPRESENTATIVE shall receive new sales leads from the COMPANY on a rotation bases with other SALES REPRESENTATIVES, and

d. SALES REPRESENTATIVE acknowledges and agrees that he/she is restricted from making sales to prospects planning to build that are assigned to another individual salesperson or dealer and that, in the event such a sale is made by SALES REPRESENTATIVE, he/she shall receive no compensation for any such sale.

4. PRODUCTION GOALS -

   a. SALES REPRESENTATIVE shall be on a probationary training period for the first 90 days of employment. During the probationary period there should be two (2) evaluations. One (1) during the week of the 45th day and the final evaluation during the week of the 90th day. It is mandatory that the new SALES REPRESENTATIVE produce a minimum sales volume of $35,000 during or by the end of the 90 day (three month) training period.

   b. Following the probationary period, SALES REPRESENTATIVE will be expected to produce and maintain minimum sales volume of $600,000 annually or $150,000.00 quarterly. There will be four (4) quarterly evaluations during each year of employment.

5. COMMISSIONS - For the services to be performed by him/her hereunder, SALES REPRESENTATIVE shall be entitled to a commission rate of 2.5% or less relative to the established retail price on sales of COMPANY'S complete log home packages for the first 90 days of employment (Probationary period) and full Commission rate of 5% or less thereafter in accordance with the following:

   a. Sales must meet an established retail and/or quoted price to customer. Commission rate will be adjusted downward, as per the sliding scale in Paragraphs 5.b. through f., as stated for any/all sales generated by SALES REPRESENTATIVE under this Agreement.

   b. COMPANY agrees to advance a portion, as defined below, of the total commission due to SALES REPRESENTATIVE on approved orders less any deficit of the SALES REPRESENTATIVE'S commission statement by the 1st payday following the 10th of the month following the month of COMPANY'S receipt of a signed Sales Agreement and 10% deposit, and pay the balance of the commission the month following delivery of the home package and receipt of full and final payment. The advance portion of the commission shall be calculated in accordance with the following:

   (1) If the Sales Agreement includes a non-refundable deposit of a minimum 10%, SALES REPRESENTATIVE shall receive an advance equivalent to 50% of the commission rate of the purchase price, less tax and shipping.

   (2) If the Sales Agreement includes any contingency or alteration of non-refund of deposit terms, the advance shall be zero.

Page 2 of 9

(3) In the event that an order is canceled, SALES REPRESENTATIVE is required to return any of the monies advances by COMPANY to SALES REPRESENTATIVE on any such order and authorizes the COMPANY to withhold the amount of any advance for a canceled order from any or next commission payment.

c. SALES REPRESENTATIVE will be advanced Zero per week against commissions. (see attached Schedule "A") SALES REPRESENTATIVE will receive a commission statement by the 10th of the month and commissions will be paid on the following payday after receiving the statement. The statements will reflect the sales and what percentage rate each sale is, what amount is drawn from the commissions and what amount is credited to the futures account. The amount SALES REPRESENTATIVE is paid/advanced is subtracted from the commissions, along with any other authorized deductions.

d. SALES REPRESENTATIVE'S commission rate will be paid at a rate of commission depending on the sale margin and product sold. This is only a benchmark and not the true effective rate of commission, with any bonus and other compensation being deducted from the benchmark rate. If SALES REPRESENTATIVE sells below the current list retail price, SALES REPRESENTATIVE will be subject to receiving less than the top rate of commission for the item(s) sold. SALES REPRESENTATIVE will be paid in accordance with the sliding scale as it corresponds to the percentage of discount given off retail price, unless there is prior written commission rate agreement by the COMPANY.

E. Commission Rate Schedule for Building Materials &Econo & Promotional Log Home Packages:

| RATE OF COMMISSION | INITIAL DRAW | %DISCOUNT OFF RETAIL PRICE |
|---|---|---|
| 2.5 % | 1.25% | 0% |
| 2.25% | 1.125% | 1% |
| 2.0 % | 1.0 % | 2% |
| 1.75% | .875% | 3% |
| 1.5 % | .75% | 4% |
| 1.25% | .625% | 5% |
| 1.0 % | .5 % | 7% |
| .75% | .375% | 10% |
| .50% | .25% | 15% |
| .25% | .125% | 20% |

F. Commission Rate Schedule for Premium & Homestead Log Home Packages:

| RATE OF COMMISSION | INITIAL DRAW | %DISCOUNT OFF RETAIL PRICE |
|---|---|---|
| 5% | 2.50% | 0% |
| 4.5% | 2.25% | 1% |
| 4.0% | 2.00% | 2% |
| 3.5% | 1.75% | 3% |
| 3.0% | 1.50% | 4% |
| 2.5% | 1.25% | 5% |
| 2.0% | 1.00% | 7% |
| 1.5% | .75% | 10% |
| 1.0% | .50% | 15% |
| .5% | .25% | 20% |

The top commission rate applies on sales made using current retail price at the time of deposit, using cedar for the price of pine promotion (Homestead & Premium package only) with no contingencies with a 10% deposit. An exception to this will be any home package sold within the following shipping points: Albany, NY., Denver, CO., Madison, WI., and Seattle, WA. The commission rate will be 1 1/4% less than the actual earned commission rate or 50% of the actual subsidized freight amount, whichever is less. The COMPANY will advertise to the effect of the F.O.B. points. All other promotions will be on a participating commission scale as outlined under specific promotion guidelines. If a customer requests a refund or fails to take delivery within the terms of their layaway agreement, any advanced commission will be debited from your account.

The three steps toward earning a full commission are:

1). Writing up a customer on a layaway agreement and taking their deposit.

2). Providing support and service to the customer during the pre-delivery period as an employee of the company

3). Providing support and service during the post delivery period, with the final objective being a satisfied customer and referrals from them as an employee of the company.

A commission is not earned until the home has been shipped and full payment has been received in accordance to the three steps outline above.

6. DUTIES OF PRINCIPAL - COMPANY shall at all times manufacture and have on hand products and merchandise in sufficient quantity to make deliveries of all such products and merchandise that may be sold by SALES REPRESENTATIVE.

7. COVENANT NOT TO COMPETE: CONFIDENTIALLY - (a) the COMPANY and SALES REPRESENTATIVE recognize that by virtue of the business conducted by the COMPANY, SALES REPRESENTATIVE will enjoy a position of trust and confidence with the COMPANY; as SALES REPRESENTATIVE will be informed of the relationship between the COMPANY and its distributors, dealers, representatives, vendors, employees, potential customers and customers and will have significant contact with the COMPANY'S distributors, vendors, dealers, representatives, customers and potential customers; SALES REPRESENTATIVE will be involved with the commission structure between COMPANY and its distributors, dealers and representatives, and the pricing structure on the sale of the COMPANY'S products developed by the COMPANY in its business, and with the marketing and distribution of those products; the SALES REPRESENTATIVE will be furnished information concerning the foregoing that is unique to COMPANY, which is not generally used in the industry and which is therefore extremely valuable to the COMPANY.

The parties further recognize that if SALES REPRESENTATIVE is permitted to compete with the COMPANY or disclose any information about COMPANY'S products or services, and/or the marketing and distribution of those products or services, irreparable damage will result to the COMPANY.

Therefore, as a material inducement to the COMPANY to enter into this Agreement and in consideration of the COMPANY'S employment of SALES REPRESENTATIVE and providing the compensation/commission rate set forth herein, the SALES REPRESENTATIVE covenants and agrees as follows:

>  (a) At no time during the term of this employment, or for the twelve months immediately following the termination of this employment for any reason, shall the SALES REPRESENTATIVE, for him or herself, or on the behalf of any other person, firm or partnership or corporation, directly or indirectly engage in or become associated with or interested in competition with the COMPANY office, or aid or abet others to do so.
>
>  (b) During the SALES REPRESENTATIVE'S employment hereunder and for a period of twelve months after he/she ceases to be employed by COMPANY, SALES REPRESENTATIVE shall not, directly or indirectly, solicit for employment or employ any Employee or Former Employee of the COMPANY.

(c) During the SALES REPRESENTATIVE'S employment, and for a period of twelve months after he/she ceases to be employed by COMPANY, SALES REPRESENTATIVE will not contract, or aid or abet others to do so, any customer or potential customer that he or she serviced, called on or learned of while working for COMPANY for the purpose of selling a log, post or conventional frame building.

(d) The SALES REPRESENTATIVE agrees not to disclose, directly or indirectly, to any individual, firm, association, partnership, or other enterprise, nor use for his or her benefit, any trade secret, pricing policy, or other information communicated to him or her by the COMPANY, including but not limited to lists of vendors, customers or potential customer or leads, pricing information and financial information which may become known to the SALES REPRESENTATIVE in the course of his/her employment with COMPANY, as well as all information relating to the manufacturing, constructing, distributing and marketing of COMPANY'S products.

(e) The SALES REPRESENTATIVE further agrees that, during the term of SALES REPRESENTATIVE'S employment with the COMPANY and thereafter, SALES REPRESENTATIVE will not disclose, communicate, divulge or use for the benefit of SALES REPRESENTATIVE or any other person, firm or corporation the name of any vendor, distributor, dealer, sales representative, potential customer, or customer of the COMPANY; any confidential information with respect to its vendors, distributors, dealers, representatives or customers; the profit and pricing structure on the products & services sold and rendered by the COMPANY; or any other information regarding the manufacturing, construction, distribution and /or marketing techniques used by COMPANY in its business.

SALES REPRESENTATIVE has carefully read and considered the provisions of this Section and having done so, agrees that he/she has received adequate consideration and that the restrictions set forth are fair and reasonable and reasonably required for the fair protection of the interest of the COMPANY.

In the event that, notwithstanding the foregoing, any of the provisions herein shall be held to be invalid or unenforceable, the remaining provisions hereof shall nevertheless continue to be valid and enforceable as though the invalid or unenforceable parts had not been included herein. The covenants herein shall survive this Agreement upon termination of employment, whether voluntary or involuntary.

The parties agree that a breach of any of the foregoing covenants would be irreparable and substantially injure the goodwill and business of the COMPANY, although the exact monetary damage would be difficult to ascertain and not susceptible of proof. Therefore, the COMPANY, shall have, in addition to other rights and remedies of common law, the right to enjoin the SALES REPRESENTATIVE from any acts of violation of these covenants.

It is agreed that in the event of a violation of this agreement that the
COMPANY will be entitled to a preliminary and permanent injunction,
said remedy being necessary to protect the rights of the COMPANY
and to maintain the status quo during the course of any litigation. Upon
award of such injunction, it is agreed that the COMPANY'S reasonable
legal costs and attorneys' fees incurred in enforcing this covenant
shall be assessed against the SALES REPRESENTATIVE.

8. TERMINATION - This agreement may be terminated at any time for any reason by COMPANY or SALES REPRESENTATIVE by providing notice to the other party.

9. CONSEQUENCES OF TERMINATION - Upon termination or expiration:

   a. SALES REPRESENTATIVE shall be entitled to receive commissions, in accordance with the terms of Paragraph 5 until the effective date of termination. SALES REPRESENTATIVE shall not be entitled to receive any commission(s) on products/materials ordered and/or delivered after the termination of employment.

   b. All catalog samples, advertising materials and price lists issued by COMPANY and in the possession of SALES REPRESENTATIVE or others are to be promptly returned to COMPANY. All other records pertaining to prices, quotations, specifications, customers and prospective customers shall be treated as if they were the confidential property of the COMPANY and are to be promptly returned to COMPANY.

10. QUOTATION - Each quotation given by COMPANY to SALES REPRESENTATIVE shall have a validity period of thirty (30) days as to price of the package.

11. SALES AND PRICES - In obtaining orders for the COMPANY'S products, SALES REPRESENTATIVE shall quote only prices and terms set forth in the established price lists of COMPANY unless otherwise agreed upon in writing by COMPANY.

12. SAMPLES - COMPANY shall furnish SALES REPRESENTATIVE as its expense a reasonable supply of samples and advertising materials to be used by the latter in performing work hereunder.

13. WAIVER - Failure to insist upon strict compliance with any other terms, covenants, or conditions, or any waiver or relinquishments of any right or power hereunder at any one time, shall not be deemed a waiver or relinquishment of such right or power at any other time or times.

14. SEVERABILITY - The invalidity or enforceability of any provision hereof shall in no way effect that validity or enforceability of any other provision.

15. MODIFICATION - This Agreement may only be modified by the parties hereto by written supplemental agreement.

16. BENEFIT - If COMPANY shall at any time be merged or consolidated into or with any other corporation, or if substantially all the assets of the COMPANY are transferred to another, the provisions of the Agreement shall be binding upon merger or consolidation or to which such assets shall be transferred and this provision shall apply in the event of any subsequent merger, consolidation or transfer.

17. NONASSIGNABILITY - The rights and benefits of SALES REPRESENTATIVE under this Agreement are personal to him/her, and no such right or benefit shall be subject to voluntary or involuntary alienation, assignment or transfer.

18. LAW - The Agreement shall be governed by the laws of the State of North Carolina.

19. NOTICES - Any notices required or permitted to be given under this Agreement shall be sufficient if given verbally or in writing and if sent by certified mail to his/her residence in the case of SALES REPRESENTATIVE, or to its principal office in the case of the COMPANY, or to such other address or addresses as either party may hereafter designate in writing to the other.

20. ARBITRATION - Any dispute with respect to this Agreement shall be decided by arbitration in the City of Rocky Mount, North Carolina, pursuant to the rules, then obtaining, of the American Arbitration Association.

21. COUNTERPARTS - This agreement may be simultaneously executed in several counterparts, each of which is executed shall be deemed to be an original, and such counterparts together shall constitute but one and the same instrument.

22. PERSONALLY DEVELOPED LEADS - SALES REPRESENTATIVE agrees to turn over to the COMPANY any and all sales leads generated by SALES REPRESENTATIVE for entry into COMPANY'S lead system. These leads shall then become the sole property of the COMPANY.

23. SUPPLIES AND EXPENSES - All supplies purchased or expenses incurred by SALES REPRESENTATIVE are solely the responsibility of the SALES REPRESENTATIVE except otherwise stated herein, or by direction of the COMPANY.

24. SALES REPRESENTATIVE agrees that all sales leads provided by COMPANY to SALES REPRESENTATIVE and/or developed by SALES REPRESENTATIVE during the term of the Agreement shall be contacted only in regard to the sale(s) of COMPANY'S products. SALES REPRESENTATIVE further agrees that all such leads are the sole property of the COMPANY and that any unauthorized use or distribution of any/all such leads will be a direct violation of the Agreement and will result in immediate termination, in addition to any other civil or criminal remedies.

25. SUBSTANCE ABUSE- SALES REPRESENTATIVE agrees and consents to a Substance Abuse test to be conducted on behalf of the COMPANY. Failure to consent of the testing or a positive result may result in immediate termination.

**26. EFFECT ON PRIOR AGREEMENTS** – This Agreement shall render any prior agreements, written or oral, between the parties null and void and shall become the full embodiment of the agreement between the parties.

**27. SALES PREPRESENTATIVE** acknowledges and agrees that no commissions are due from the COMPANY from the Sales Representative's PRIOR employment with the COMPANY and the COMPANY acknowledges that no debit of commissions will be charged to the SALES REPRESENTAIVE from any sales that may have been made during the SALES REPRESENTATIVE'S prior employment with the Company.

**28. IN WITNESS THEREOF, THE PARTIES HAVE FULLY READ AND UNDERSTAND THIS AGREEMENT AND ANY AND ALL AMENDMENTS MADE TO IT, AND HAVE HEREUNTO SET THEIR HANDS AND SEALS AS OF THE DAY AND YEAR FIRST WRITTEN ABOVE.**

Dated this ____28____ day of ____May____ 20_03_

ATTEST:     Log Cabin Homes, Ltd.

_____
Witness

_____
Manager

_____
Witness

_____
Sales Representative